UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

EMIL MILES,

                Petitioner,

   -v-                                                 Civ. No. 9:05-CV-1200 (LEK)

JOSEPH T. SMITH,

                Respondent.

APPEARANCES:                                        OF COUNSEL:

EMIL MILES
Petitioner, *pro se*
99-B-2628
Sing Sing Correctional Facility
354 Hunter Street
Ossining, New York 10562

HON. ANDREW M. CUOMO                  LUKE MARTLAND, ESQ.
Attorney General for the State of New York    Assistant Attorney General
Attorney for Respondent
120 Broadway
New York, New York 10271

LAWRENCE E. KAHN
U.S. District Judge

## DECISION AND ORDER

**I.    Background**

**A.    Facts**

      The following factual summary is derived from the state court records. In December 1996, December 1997, and August 1998, Miles committed four robberies at three different Giant Supermarkets in the city of Binghamton, New York. *See* Transcript of Trial of Emil J. Miles ("Trial Tr."), June 21-24, 1999, at 296-316, 444-45, 600-01, 604.

The first two robberies took place on December 8, 1996 and December 24, 1996 at the Giant Supermarket located at 56 Main Street in Binghamton.  During the December 8 robbery, Miles was wearing a hooded sweatshirt over his head, a tan jacket, and a mask that partially covered his face.  Trial Tr. at 602.  Miles threw a brown sack at Catherine Ostrum, the store's bookkeeper, and pointed a silver gun at her.  Id. at 601-02.  He demanded money and threatened to shoot Ostrum if she did not comply.  Id. at 604.  Ostrum could see Miles's face from the bridge of his nose to the top of his forehead.  Id. at 603.  Michael Holland, the store's assistant manager, heard "yelling" and walked to the front of the store.  *Id.* at 638-42.  Miles pulled down the mask and told Holland to stand next to him or Miles would "blow [his] head off."  Id. at 601-04; 636-40.  Ostrum put $3,500.00 into the brown sack and Miles fled.  Id.

During the December 24 robbery, Miles again approached Ostrum and two other store employees.  He threw another brown sack at Ostrum, pointed a silver gun similar to the gun used in the December 8 robbery at her, and demanded money.  Trial Tr. at 605-06.  Ostrum put $5,000.00 into the brown sack and gave it to Miles.  Id. at 607-08.  Holland was also present during the robbery.  Id. at 643-44.  He ran to the front of the store and saw Miles from the back, but recognized him as the same person who robbed the store on December 8 based upon his build, height, eyes, and voice.  Id. at 604-07, 644-45.  Holland also recognized the gun and brown sack from the previous robbery.  Id.  Ostrum and Holland later identified Miles as the person who committed both robberies at a line-up conducted on November 20, 1998 and in court.  Id. at 608-09, 633-34.

The third robbery took place on December 20, 1997, between 7:30 p.m. and 8:00 p.m. at the Giant Supermarket located at 279 Main Street in Binghamton.  Trial Tr. at 296-97, 303.

Miles was wearing a green army-type coat and a green knit hat when he entered the store. Id. at 304-05, 310. He approached the customer service window and threw a blank piece of paper onto the counter. Id. at 305. Jason Vymislicky, a store employee, asked Miles if he needed assistance. Id. at 305. Miles pulled out a gun and slid it along the service counter toward Vymislicky. Miles cocked the gun and demanded money. Id. at 305-06, 331. Vymislicky emptied the contents of a cash drawer and safe, approximately $30,000.00, into a white pillowcase supplied by Miles. Id. at 306-08. Vymislicky identified Miles as the man who robbed him in a pre-trial line-up conducted on November 20, 1998 and in court. Id. at 311-15.

Keith Ludwig lived near the Giant Supermarket. Trial Tr. at 334-35. The day after the December 20, 1997 robbery, Ludwig found a green jacket and a dark colored hat under his car. Id. at 335-36. There were rubber gloves in the jacket. Id. at 359-62. Ludwig turned the items over to Investigator Gerald Shoemaker of the Binghamton Police Department. Id. at 337-40, 344-56. Vymislicky identified both the hat and the jacket as similar to those worn by Miles during the robbery. Id. at 310-11.

A latent fingerprint found inside one of the gloves matched Miles's left ring fingerprint. Trial Tr. at 382-99, 423-34. Shannon Morris, a forensic scientist, recovered several pieces of hair from the hat. Id. at 509-21. The DNA of a hair retrieved from the hat matched Miles's DNA profile, which was obtained from a blood sample. The chance that this particular genetic profile would be found at random in the population was one in 212,000,000. Id. at 521.

The final robbery took place on August 23, 1998 at approximately 7:50 p.m. at the Giant Supermarket located on Conklin Avenue in Binghamton. Trial Tr. at 445-46. Miles approached Jamie Monaco, the store's bookkeeper. He threw a pillowcase at Monaco and instructed him to

give Miles $50,000.00 or he would "blow [his] head off." Id. at 446. Monaco put $3,000.00 into the pillowcase and threw it at Miles. Id. at 447-48. Monaco was unable to identify Miles, but the robbery was recorded by a surveillance camera. Id. at 450-53.

Gary Wylie, a former military police officer, was inside the supermarket buying milk when the robbery occurred. Trial Tr. at 472-75. He walked out of the store and waited for Miles to exit. Id. at 476. Wylie watched Miles get into a parked minivan, and wrote down the license plate number. Id. at 478-82. Wylie identified a photograph of a white Mazda minivan as the same one he saw Miles driving. The minivan was owned by Shennita Jenkins, Miles's girlfriend, who lent Miles the minivan on August 22, 1998. Id. at 571-76.

On October 20, 1998, Miles was driving the minivan identified by Wylie and Jenkins when he was stopped by the New York State Police in Bronx County. Trial Tr. at 578-84, 584-97. Police officials took Miles to Broome County. Miles declined to speak to police, but when he was told they were investigating the August 23, 1998 robbery in Binghamton, he told them he "was never in Binghamton." Id. at 578-79, 583-87.

**B. State Court Proceedings**

An indictment was returned on December 11, 1998, charging Miles with five counts of Robbery in the First Degree. N.Y. PENAL LAW §160.15(4).[1] The third count of the indictment charged Miles with aiding and abetting Robbery in the First Degree and the remaining counts

---

[1] Unless otherwise indicated, all references to the New York Penal Law are to McKinney 1998.

charged him as a principal. <u>See</u> Dkt. No. 9, Ex. a, Attach. at A4 (Indictment, Count Three).[2] The Honorable Patrick H. Mathews, Broome County Court Judge, presided over Miles's trial proceedings. Miles was represented by William T. Martin, Esquire.

A combined Wade[3]/Huntley[4] hearing was held on April 19, 1999. During the hearing, counsel argued that Miles was arrested without probable cause and moved the court to suppress identification evidence and Miles's statement that he had never been in Binghamton as fruits of the illegal arrest. <u>See</u> Transcript of Suppression Hearing ("Suppression Tr."), 4/19/99, at 8-10, 64-67, 70-71, 134-37. Counsel also argued that the line-up identification procedure was unduly suggestive. <u>Id.</u> at 23.[5]

The trial court denied the motions. It ruled from the bench that the manner in which the lineup was conducted did not create a "risk of false identification." <u>Id.</u> at 64. The lineup consisted of men "substantially similar in appearance" to Miles, and while there were some differences, those differences were not significant enough to render the procedure unduly

---

[2] The robbery referenced in count three took place on May 4, 1997 at the Giant Supermarket on 56 Main Street in Binghamton. <u>See</u> Dkt. No. 9, Ex. a, Attach. at A4 (Indictment, count three), Trial Tr. at 620-32, 665-96, 700-23, 783. Miles was acquitted of this charge.

[3] <u>United States v. Wade</u>, 388 U.S. 218 (1967). The purpose of a <u>Wade</u> hearing is to determine whether identification testimony should be suppressed because the manner in which the identification of the suspect was obtained was unduly suggestive. <u>See</u> <u>Blas v. Herbert</u>, No. 02 Civ. 6257, 2003 WL 22480093, at *3 n. 2 (S.D.N.Y. Oct. 21, 2003).

[4] <u>People v. Huntley</u>, 15 N.Y.2d 72 (1965). A <u>Huntley</u> hearing is conducted to determine whether a defendant's statements to the police must be suppressed on the grounds that he was subjected to custodial interrogation without the warnings required under <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966). <u>See</u> <u>Harris v. New York</u>, 202 F. Supp. 2d. 3, 4 & n.3 (S.D.N.Y. 2001); <u>see also</u> New York's Criminal Procedure Law ("CPL") § 710.

[5] Counsel also moved to suppress a photo array shown to Monique Forbes (a.k.a Davis) in connection with the May 4, 1997 robbery (count three of the indictment). <u>See</u> Suppression Hrg. at 15-24. The trial court denied the motion, ruling that the array was not unduly suggestive. <u>Id.</u> at 61-63.

suggestive. Id. at 62.  The court also ruled from the bench that police had probable cause to arrest Miles. Id. at 142-44.  In a written Decision issued on May 6, 1999, the trial court denied Miles's motion to suppress his statement that he had never been in Binghamton, finding that it was not the product of "express questioning or its functional equivalent." Dkt. No. 9, Ex. a, Attach. at A9 (letter decision, Mathews, J., 5/6/99).

A jury trial began on June 21, 1999 and concluded on June 24, 1999.  The jury acquitted Miles of count three of the indictment, and convicted him of the remaining counts.  Trial Tr. at 946-48.  On September 24, 1999, Miles was sentenced to an indeterminate term of ten (10) to twenty (20) years in prison on count one of the indictment.  See Sentencing Transcript ("Sentencing Tr."), 9/24/99, at 14.  He was also sentenced to an indeterminate term of twelve and one-half (12 ½) to twenty-five (25) years in prison on count two, to run concurrently with the sentence on count one.  On count four, Miles was sentenced to an indeterminate term of ten (10) to twenty (20) years in prison, and on count five, he was sentenced to an indeterminate term of twelve and one-half (12½) to twenty-five (25) years in prison to run concurrently to the sentence imposed on count four.  The sentences on counts one and two were ordered to run consecutively to the sentences imposed on counts four and five, for an aggregate sentence of twenty-five to fifty years in prison.  Id.

Miles appealed his conviction to the New York State Supreme Court Appellate Division, Third Department.  On February 3, 2005, that court affirmed Miles's conviction and sentence. People v. Miles, 15 A.D.3d 686 (3d Dep't. 2005), Dkt. No. 9, Ex. c.  The New York Court of Appeals denied Miles's application for leave to appeal on April 22, 2005.  People v. Miles, 4 N.Y.3d 855 (2005), Dkt. No. 9, Exs. d, e.

**C.    This Action**

On September 22, 2005, Petitioner filed a *pro se* Petition in this District seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Dkt. No. 1. This Court reviewed the petition and thereafter directed the Respondent to file his response in an Order dated October 4, 2005. Dkt. No. 4. On December 15, 2005, the Office of the Attorney General for the State of New York, acting on Respondent's behalf, filed a Response and Memorandum of law in opposition to the Petition along with the relevant state court records. Dkt. Nos. 9-10. On January 30, 2006, Petitioner filed a Traverse. Dkt. No. 12.

Petitioner argues that: (1) his statement to police and pre-trial identifications should have been suppressed because they were the "fruit of an unlawful arrest"; (2) the evidence was insufficient and the verdict was against the weight of the evidence; and (3) the sentence imposed was unduly harsh. Dkt. No. 1, Attach. at 1-9. For the reasons that follow, the petition is denied.

## II. DISCUSSION

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may award habeas corpus relief with respect to a claim adjudicated on the merits in state court only if the adjudication of the claim: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding.[6] Hawkins v. Costello, 460 F.3d 238, 242 (2d Cir. 2006), *cert. denied* 127 S. Ct. 1267 (2007); DeBerry v. Portuondo, 403 F.3d 57, 66 (2d Cir. 2005) (citing 28 U.S.C. § 2254(d)), *cert. denied sub nom* DeBerry v. Smith, 546 U.S. 884 (2005). AEDPA also requires that in a habeas proceeding "a determination of a factual issue made by a State court shall be presumed to be correct [and][t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also DeBerry, 403 F.3d at 66; Boyette v. LeFevre, 246 F.3d 76, 88 (2d Cir. 2001).

A state court decision violates the "contrary to" clause of section 2254(d)(1) when it "reaches a result opposite to the one reached by the Supreme Court on the same question of law or arrives at a result opposite to the one reached by the Supreme Court on a 'materially indistinguishable' set of facts.'" Earley v. Murray, 451 F.3d 71, 74 (2d Cir. 2006) (citing Williams, 529 U.S. at 405-06). A federal habeas court may only grant the writ under the "unreasonable application" clause of the section when the state court's decision "identifies the correct rule of law but applies that principle to the facts of the prisoner's case in an unreasonable way." Id. at 74 (citing Williams, 529 U.S. at 413). A federal court engaged in habeas review is not charged with determining whether the state court's determination was merely incorrect or erroneous, but instead whether such determination was "objectively unreasonable." Williams, 529 U.S. at 409; see also Sellan v. Kuhlman, 261 F.3d 303, 315 (2d Cir. 2001). Objectively unreasonable means " 'some increment of incorrectness beyond error' " is required in order to

---

[6] It should be noted that "clearly established federal law" in this context "refers only to the holdings of the Supreme Court." Rodriguez v. Miller, 499 F.3d 136, 140 (2d Cir. 2007), (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)), *cert. denied* No. 07-8594, 2008 WL 102403 (U.S. Mar. 17, 2008).

grant a federal habeas application.  Earley, 451 F.3d at 74 (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)).

If, however, a state court does not adjudicate a petitioner's federal claim "on the merits," the state court's decision is not entitled to AEDPA deference and instead, the federal habeas court must apply the pre-AEDPA standard of *de novo* review to the state court's disposition of the federal claim.  See Cotto v. Herbert, 331 F.3d 217, 230 (2d Cir. 2003) (citing Aparicio v. Artuz, 269 F.3d 78, 93 (2d Cir. 2001)).

### B.	Substance of The Claims

#### 1.  Suppression

Miles claims that his statement that he had never been in Binghamton and the line-up identifications should have been suppressed as "the fruit of an unlawful arrest."  Dkt. No. 1, Attach. at 1-2; Dkt. No. 12, Traverse, at 1-2.  Respondent maintains that this claim is not cognizable and should be dismissed.  Dkt. No. 10, Resp't Mem. at 10-11.

This Court agrees with Respondent.  In Stone v. Powell, 428 U.S. 465 (1976), the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  Id. at 494-95.  See also Pina v. Kuhlmann, 239 F. Supp. 2d 285, 289 (E.D.N.Y. 2003) ("It is well settled that [Fourth Amendment] claims are not cognizable for habeas corpus review where a State has provided a full and fair opportunity to litigate this issue.").  The Supreme Court has since extended Stone to preclude habeas review of a "Fourth Amendment challenge to the

introduction of a confession made after an allegedly unlawful arrest." Glover v. Herbert, 431 F. Supp. 2d 335, 338 (W.D.N.Y. 2006) (citing Cardwell v. Taylor, 461 U.S. 571, 572-73 (1983) (*per curiam*) (reversing grant of habeas corpus where Circuit Court of Appeals had found that there was an unattenuated causal link between the custodial statements made by respondent and a violation of the Fourth Amendment)).  Thus, Stone bars habeas review of claims that statements made during or after an allegedly unlawful arrest should have been suppressed as fruit of an illegal arrest.  Cardwell, 461 U.S. at 572-73, Glover, 431 F. Supp. 2d at 338.  Stone also bars review of habeas claims that identification testimony should be suppressed under the Fourth Amendment as the fruit of an illegal arrest.  See Chavis v. Henderson, 638 F.2d 534, 538 (2d Cir. 1980) (petitioner's claim "that his arrest was without probable cause and that therefore the identification evidence should have been excluded, was properly rejected by the district court. [Petitioner] made no showing ... that he had been precluded from a full and fair opportunity to litigate this issue in the state courts.  Under Stone v. Powell ..., he may not urge the same grounds for federal habeas corpus relief." ), *cert. denied* , 454 U.S. 842 (1981)); see also Lebron v. Sanders, No. 02 Civ. 6327, 2008 WL 793590, at *8-9 (S.D.N.Y. Mar. 25, 2008); Briggs v. Phillips, No. 02 Civ. 9340, 2003 WL 21497514, at *4-5 (S.D.N.Y. Jun. 30, 2003).  Following Stone, review of Fourth Amendment claims in habeas petitions is permissible only: "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process."  Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992).  See also Ramdeo v. Phillips, No. 04-CV-1157, 2007 WL 1989469, at *27 (E.D.N.Y. Jul. 9, 2007).

New York has a corrective procedure for Fourth Amendment violations, which is facially adequate. See CPL §710; Capellan, 975 F.2d at 70 n. 1.  Under CPL § 710, a defendant may move to suppress evidence he claims was unlawfully obtained when he has "reasonable cause to believe that such [evidence] may be offered against him in a criminal action." Huntley v. Superintendent, Southport Corr. Fac., No. 00-CV-191, 2007 WL 319846, at *7 (N.D.N.Y. Jan. 30, 2007) (Hurd, D.J., adopting Report and Recommendation of Magistrate Judge Lowe) (quoting CPL § 710.20).  Miles availed himself of that procedure by making a motion to suppress his statements and pre-trial identification testimony on the ground that they were fruits of an alleged illegal arrest. Suppression Tr. at 8-10, 64-67, 70-71, 134037.  The trial court denied these motions after a lengthy hearing, and Miles appealed that denial.[7]  Further, having reviewed the record, there was no unconscionable breakdown in the underlying process. Miles's claim is barred by Stone and Cardwell and it is dismissed.

### 2. Ground Two - Weight and Sufficiency of the Evidence

Miles next argues that the evidence was insufficient to support his convictions, "or at least was against the weight of the evidence." Dkt. No. 1, Attach. at 2-7.  Specifically, he claims that witnesses gave inconsistent identification testimony that should not have been believed by the jury. Id., Dkt. No. 12, Traverse, at 3-9.  Respondent argues that to the extent that Miles is arguing that the verdict was against the weight of the evidence, that claim is not cognizable on

---

[7] The Appellate Division found that "any error in admitting [Miles's] statement to police that he had never been to the city where these crimes were committed was harmless given the overwhelming evidence of his guilt." Miles, 15 A.D.3d at 688 (citation omitted).  The court further determined that the pretrial lineup identifications were "obtained after a court order and thus they were not an exploitation of any alleged antecedent illegality." Id. (citation omitted).

11

habeas review. Dkt. No. 10, Resp't Mem. at 12. Respondent further argues that any sufficiency claim is without merit. Id. at 12-15.

### a. Weight of the Evidence

Petitioner's claim that there were inconsistencies in the testimony of witnesses who identified him at trial challenges the credibility of these witnesses and, thus, the weight that their testimony should have been given by the jury. Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996) (stating that "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal; we defer to the jury's assessments of both of these issues."); Burnett v. Burge, No. 02-CV-265, 2005 WL 2406000, at *6 (W.D.N.Y. Sept. 29, 2005) (on collateral review, the court must "presume that the jury resolved any questions of credibility in favor of the prosecution.") (citing Jackson v. Virginia, 443 U.S. 307, 326 (1979)); McMillan v. McClellan, No. 91 Civ. 38, 1992 WL 96330, at *4 (S.D.N.Y. Apr. 24, 1992) ("The question of identification by eyewitnesses is a matter of credibility, within the exclusive province of the jury, and a federal habeas court has no license to reassess the factfinder's determination as to witness credibility."). "Weight of the evidence" claims derive from CPL § 470.15(5), which permits an appellate court in New York to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." CPL § 470.15(5); People v. Bleakley, 69 N.Y.2d 490 (1987). Since weight claims are grounded in the state criminal procedure statute, they are not cognizable on habeas review. See 28 U.S.C. § 2254(a) (permitting federal habeas corpus review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or a federal law or treaty"); Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (habeas corpus review not available to

remedy alleged error of state law); Hogan v. Livingston Corr. Fac._,_ No. 05-CV-6440, 2007 WL 2907322, at *8 (W.D.N.Y. Oct. 3, 2007) ("Since a 'weight of the evidence' claim is purely a matter of state law, it is not cognizable on habeas review."); Stein v. Artus, No. 04-CV-0439, 2007 WL 2778914, at *7 (N.D.N.Y. Sept. 19, 2007)(Lowe. J)(same); Welch v. Burge_,_ No. 03-CV-01423, 2007 WL 2028048, at *7 (N.D.N.Y. July 12, 2007) (Kahn, D.J., adopting Report-Recommendation of Magistrate Judge Bianchini) (same).  To the extent that Miles challenges the weight of the evidence, that claim is denied.

### b. Sufficiency of Evidence

A petitioner who challenges a conviction on the sufficiency of the evidence bears a "very heavy burden."  United States v. Quattrone, 441 F.3d 153, 169 (2d Cir. 2006); Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir. 2002).  The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crimes with which he is charged.  See Fiore v. White, 531 U.S. 225, 228-29 (2001); Jackson v. Virginia, 443 U.S. 307, 315 (1979). This inquiry "does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit."  Herrera v. Collins, 506 U.S. 390, 402 (1993)(emphasis in original).  A habeas petitioner claiming that there was insufficient evidence supporting the conviction is entitled to relief under 28 U.S.C. § 2254 only if "upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  Jackson_,_ 443 U.S. at 324; see also Schlup v. Delo, 513 U.S. 298, 323 n. 38 (1995).  The reviewing court is required to consider the evidence in the light most

favorable to the prosecution, and draw all inferences in its favor. Jackson, 443 U.S. at 319.[8]

"When considering the sufficiency of the evidence of a state conviction, '[a] federal court must look to state law to determine the elements of the crime.'" Ponnapula, 297 F.3d at 179 (quoting Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999), *cert. denied* 528 U.S. 1170 (2000)).

Under New York law, the state had to prove that Miles forcibly stole property and during the "commission of the crime or during immediate flight therefrom" he displayed what appeared to be a "pistol, revolver . . . or other firearm." N.Y. PENAL LAW §160.15 (4). The Appellate Division summarized the evidence presented on each count of first degree robbery for which Miles was convicted, and found that evidence sufficient to sustain the convictions. Miles, 15 A.D.3d at 687-88. That decision is entitled to AEDPA deference, and is supported by the record.

As the Appellate Division found, the December 8, 1996 robbery (count one of the indictment) was established by the eyewitness testimony of Catherine Ostrum and Michael Holland. Miles, 15 A.D.3d at 687. Each of these witnesses testified that Miles was the person who entered the store at 56 Main Street in Binghamton, pointed a gun at Ostrum and Holland, threatened to kill Ostrum if she did not give him money, and fled with $3,500.00. Trial Tr. at 600-08, 638-45. The December 24, 1996 robbery (count two of the indictment) was established by testimony that Ostrum was "again robbed at the same grocery store 16 days later by a man wearing a ski mask but with the same voice and silver gun as the December 8, 1996 perpetrator." Miles, 15 A.D.3d at 687. Ostrum and Holland identified Miles as the perpetrator of both

---

[8] The Jackson standard is clearly established federal law as determined by the Supreme Court. See Huber v. Schriver, 140 F. Supp. 2d 265, 276 n. 5 (E.D.N.Y. 2001) (citing Francis S., 221 F.3d at 114) (other citation omitted); see also Santana v. Kuhlmann, 232 F. Supp. 2d 154, 166-67 (S.D.N.Y. 2002).

robberies. Trial Tr. at 608-09, 644-45.

The Appellate Division also ruled the evidence was sufficient to establish the December 20, 1997 robbery (count four of the indictment) based upon eyewitness testimony of Jason Vymislicky that Miles entered the Giant Supermarket at 279 Main Street in Binghamton, pointed a gun at him, and demanded $200,000.00. Miles, 15 A.D.3d at 687; Trial Tr. at 305-06, 331. Vymislicky testified that Miles wore a green army coat and a green hat. Trial Tr. at 304-05, 310. The coat and hat were found in a driveway near the supermarket. Id. at 334-35. The Appellate Division noted that Miles's "fingerprint was found on one of the gloves and a hair retrieved from the hat was determined through DNA analysis to belong to him." Miles, 15 A.D.3d at 687; Trial Tr. at 382-99, 423-34, 509-21.

Finally, the Appellate Division found that the evidence was sufficient to support Miles's final conviction for the August 23, 1998 robbery. Miles, 15 A.D.3d at 687-88. In that robbery, Miles showed store bookkeeper Jamie Monaco a gun, threw a pillowcase at him, and demanded money. Miles fled the store with approximately $3,000.00. Trial Tr. at 446. Although "this store clerk was unable to identify defendant as the perpetrator, the jury was played a surveillance tape of the robbery." Miles, 15 A.D.3d at 688. Gary Wylie, a shopper, wrote down the license plate number of the van Miles was driving when he fled the robbery. Id.; Trial Tr. at 472-82. The van was owned by Miles's girlfriend, "who testified at trial that she had lent it to him the previous day." Miles, 15 A.D.3d at 688; Trial Tr. at 571-76.

Under the facts and circumstances of this case, it was not irrational to have found that each element of first degree robbery was proven beyond a reasonable doubt. The Appellate Division did not act contrary to or unreasonably apply Supreme Court precedent in rejecting

Miles's claim. The petition on this ground is denied.

### 3. Sentencing

Petitioner next claims that the sentence imposed was unduly harsh and excessive because "no one was injured" during the robberies and because his criminal history was not "especially bad." Dkt. No. 1, Attach. at 8-9. Respondent argues that this claim is not cognizable on habeas review. Dkt. No. 10, Resp't Mem. at 15-16.

It is firmly established that "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992); see Mayerhofer v. Bennett, No. 02-CV-0074, 2007 WL 1624767, at *7 (N.D.N.Y. Jun. 6, 2007) (Kahn, D.J. adopting Report & Recommendation by Magistrate Judge Bianchini). Miles was convicted of four counts of first degree robbery, a class B violent felony. Trial Tr. at 946-48; see N.Y. PENAL LAW §160.15. The trial court was authorized to sentence Miles to a maximum indeterminate sentence of twelve and one-half to twenty-five years in prison on each count. See N.Y. PENAL LAW §§ 70.02(3)(a), (4)(McKinney L. 1995, Subd. 4, c. 3, §4)); People v. Ramirez, 89 N.Y.2d 444, 450 n. 3 (1996)(stating that beginning in 1995, the minimum indeterminate sentence imposed must be fixed by the court at one-half the maximum sentence).[9] The sentences imposed on counts one and four, an indeterminate term of ten to twenty years in prison, were well within the statutory range. See Sentencing Tr. at 14. While the sentence

---

[9] New York's sentencing scheme that requires determinate sentences for violent felony offenses (N.Y. PENAL LAW § 70.02) applies to crimes committed on or after September 1, 1998. Since each of the robberies occurred prior to September 1, 1998, the new determinate sentencing scheme does not apply to Miles. See Sentencing Tr. at 2-3.

imposed on counts two and five, indeterminate terms of twelve and one-half to twenty-five years in prison, was the maximum term permissible, the sentence did not exceed it.  Sentencing Tr. at 12-13.  The trial court was also authorized to order the concurrent sentences on counts one and two to run consecutively to the concurrent sentences on counts four and five because each robbery was based upon "separate and distinct acts."  See Palacios v. Burge, 470 F. Supp. 2d 215, 224 (E.D.N.Y. 2007) ("consecutive sentences are permissible where the People demonstrate that the offenses are based on separate and distinct acts.") (quoting People v. Parks, 95 N.Y.2d 811, 815 n. 2 (2000)). The imposed sentence was within the statutory range, and this theory cannot afford Miles relief.

Miles's claims that the sentence was unduly harsh because no one was hurt and because his criminal history was not "especially bad" are not federal claims subject to review by a habeas court, because judges have the authority to exercise broad discretion when imposing sentences. See U.S. v. Booker, 543 U.S. 220, 223 (2005); Fielding v. LeFevre, 548 F.2d 1102, 1109 (2d Cir. 1977).  This is so even in circumstances where a petitioner, like Miles, has a limited criminal history.  See, e.g., Townsend v. Burke, 334 U.S. 736, 741 (1948) ("The [petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus."); Valentine v. Lord, No 03 Civ. 4834, 2006 WL 1997708, at *4 (S.D.N.Y. Jul. 18, 2006) (argument that sentence harsh and excessive due to petitioner's youth when she committed the crime and her lack of a prior criminal record is not a constitutional basis for overturning a sentence when it otherwise lies within the prescribed statutory range); Steele v. Filion, 377 F. Supp. 2d 332, 337 (W.D.N.Y. 2005) (no abuse of discretion in imposing consecutive sentences

where sentence within the applicable statutory range, even though petitioner had one prior misdemeanor conviction and positive factors in the pre-sentencing profile); Davis v. Senkowski, No. 97-CV-2328, 1998 WL 812653, at *8 (E.D.N.Y. Aug. 6, 1998) (rejecting argument that sentence was excessive in light of petitioner's youth and prior criminal record).

Finally, to the extent that Petitioner's claim could arguably be viewed as a challenge under the Eighth Amendment's prohibition of cruel and unusual punishment, that claim also fails. The Eighth Amendment forbids only extreme sentences which are "grossly disproportionate" to the crime of conviction. Lockyer v. Andrade, 538 U.S. 63, 72-73 (2003); Harmelin v. Michigan, 501 U.S. 957, 995 (1991). It is well-established that a sentence of imprisonment that is within the limits of a valid state statute is not cruel and unusual punishment in the constitutional sense. See White, 969 F.2d at 1383; Lou v. Mantello, No. 98-CV-5542, 2001 WL 1152817, at *13 (E.D.N.Y. Sept. 25, 2001). The Supreme Court has held that, for offenses less than manslaughter, sentences longer than 25 years are not grossly disproportionate. See Staubitz v. Lord, No. 03-CV-0671, 2006 WL 3490335, at *2 (E.D.N.Y. Dec. 1, 2006) (citing Ewing v. California, 538 U.S. 11 (2003) (25 years to life for grand theft) and Harmelin, 501 U.S. 957 (1991) (life in prison without the possibility of parole for cocaine possession)). Petitioner's sentence was not contrary to or an unreasonable application of that precedent. Since the sentence imposed was plainly within the limits authorized by statute, and was not grossly disproportionate to the crime of conviction, this ground of the petition is denied.

**IV. Certificate of Appealability**

For the reasons set forth above, the petition for a writ of habeas corpus filed by Miles is

dismissed. No certificate of appealability shall issue because Miles has failed to make a "substantial showing of a denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); see also Lucidore v. New York State Div. of Parole, 209 F.3d 107, 112 (2d Cir. 2000), *cert. denied* 531 U.S. 783 (2000).

**WHEREFORE,** it is hereby

**ORDERED** that Miles's Petition for a writ of *habeas corpus* (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED**, that no certificate of appealability shall issue with respect to any of Petitioner's claims; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED.**

DATED:      April 21, 2008
            Albany, New York

*[signature]*
Lawrence E. Kahn
U.S. District Judge